```
                    UNITED STATES DISTRICT COURT

                    WESTERN DISTRICT OF LOUISIANA

                         ALEXANDRIA DIVISION


CINDY J. PRUITT,                       CIVIL ACTION
      Appellant                        NO. CV07-1549-A

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER        JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                    MAGISTRATE JUDGE JAMES D. KIRK
      Appellee
```

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Cindy J. Pruitt ("Pruitt") filed an application for supplemental security income ("SSI") on June 20, 2005, alleging a disability onset date of September 21, 2004 (Tr. p. 53), due to congestive heart failure, diabetes, neuropathy in the legs, high blood pressure, depression, back problems, anxiety, and obesity (Tr. p. 65). That application was denied by the Social Security Administration ("SSA") (Tr. p. 39).

A hearing was held before an administrative law judge ("ALJ") on October 17, 2006, at which Pruitt appeared with her attorney and a witness (Tr. p. 372). The ALJ found that, although Pruitt suffers from obesity, diabetes mellitus without end organ damage, and hypertension (Tr. p. 15), she does not have an impairment or combination of impairments that meets or equals on of the listed impairments in Appendix I and has the residual functional capacity to perform the full range of light work (Tr. p. 16), and therefore was not under a disability at any time through the date of the ALJ's decision on March 23, 2007 (Tr. p. 19).

Pruitt requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 3) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Pruitt next filed an appeal in this court seeking judicial review of the Commissioner's final decision.  Pruitt raises the following issues for review on appeal:

>	1. The Commissioner erred by not finding Pruitt suffers from an impairment or combination of impairments which meet or equal a listing under the Social Security Act.
>
>	2. The Commissioner erred by not proffering a copy of the consultative examiner's report to claimant or attorney representative prior to issuing a decision determining Pruitt's disability.

Pruitt filed briefs on appeal (Docs. 8, 10) to which the Commissioner responded (Doc. 9).  Pruitt's appeal is now before the court for disposition.

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a).  Eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. § 1382(a).  To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382(a)(3).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have

authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### Summary of Pertinent Facts

Pruitt was 42 years old at the time of her administrative hearing, had an eight grade education, and had training as a CNA in a nursing home (Tr. p. 375). Pruitt had work experience as a CNA in a nursing home for about three months in 2000 (Tr. p. 72).

In October 1999, Pruitt was measured at 5'7" tall, and admitted smoking two packs of cigarettes per day (Tr. p. 151). In November 1999, Pruitt was morbidly obese at 351 pounds, and her blood pressure was 142/96 (Tr. p. 152). In December 1999, Pruitt was 35 years old, her weight was 352.2 pounds, and her blood pressure was 158/112 (Tr. p. 155).

In April 2001, Pruitt was 37 years old, she weighed 368 pounds, and her blood pressure was 154/90 (Tr. p. 161). In August 2001, continuing edema was noted and Lasix was prescribed (Tr. p. 164). Pruitt was told to stop smoking, follow a low sodium diet, exercise daily, prop up her legs and take the Lasix for her edema, and try Effexor to treat her depression and anxiety (Tr. p. 164). By September 2001, Pruitt weighed 380.5 pounds. She reported the Effexor had been effective, and she was again ordered to diet and

exercise (Tr. p. 167).

In March 2002, Pruitt complained of chronic low back pain and leg pain, and was diagnosed with left leg sciatica (Tr. pp. 169-170). It was noted that she still smoked two packs of cigarettes per day (Tr. p. 169). In May 2002, Pruitt weighed 295.1 pounds, her blood pressure was 170/74, and she complained of shooting chest pain for two days (Tr. p. 175). Pruitt had run out of medications and was depressed again, but was smoking only one pack of cigarettes per day (Tr. p. 175). Pruitt took an ECG test which was abnormal - she had a normal sinus rhythm and bi-atrial enlargement (Tr. p. 177). She was prescribed Ultram for gastro-intestinal upset (Tr. p. 175).

Pruitt complained of coughing for over two weeks in June 2002, despite taking antibiotics for it; she was urged to stop smoking (Tr. pp. 183-186). Her chest x-ray was normal (Tr. p. 187).

In July 2002, Pruitt complained of abdominal pain for one day caused by GI problems (Tr. p. 192).

In August 2002, Pruitt complained of a cough, congestion, and difficulty breathing (Tr. p. 201). Pruitt's chest x-ray was normal, with no signs of active cardiac, pulmonary, or osseous abnormalities (Tr. p. 200).

In October 2002, Pruitt had edema, low back pain, increased triglyceride levels, her weight was down to 367 pounds, and her blood pressure was 108/58 (Tr. p. 213). She was ordered to continue her diet and her Zoloft was increased (Tr. p. 213).

In November 2002, Pruitt reported pelvic pain, for which she

was prescribed Tylenol 3; she weighed 380 pounds and her blood pressure was 144/88 (Tr. p. 215-218). In December 2002, Pruitt was diagnosed with gall bladder colic (Tr. p. 219). She weighed 390 pounds, her blood pressure was 147/72, her hypertension was stable, her edema was stable, and her diabetes medication was changed (Tr. p. 221). Pruitt was ordered to attend diabetes classes (Tr. pp. 221, 224).

In March 2003, Pruitt was to have endometriosis surgery and have her gall bladder removed (Tr. p. 225), but her surgeries were cancelled due to her morbid obesity (Tr. p. 226). Pruitt weighed 401.1 pounds (Tr. p. 226). In April 2003, Pruitt was again told to diet and exercise (Tr. p. 233). She was also still smoking (Tr. p. 233). An x-ray of Pruitt's abdomen in June 2003 was normal (Tr. p. 234).

In June and July 2003, Pruitt had problems with elevated blood pressure and she was prescribed Clonidine (Tr. pp. 239-240).

In October 2003, Pruitt's weight was down to 372 pounds, her diabetes, hypertension, edema, and low back pain were stable, so her medications were continued (Tr. p. 246).

In February 2004, Pruitt weighed 381 pounds, her blood pressure was 162/86, and she was ordered a trial of Neurontin for her sciatica (Tr. p. 255).

In April 2004, Pruitt's ECG Showed normal sinus rhythm with sinus arrhythmia and right atrial enlargement (Tr. pp. 276-278). A chest x-ray showed her heart was mildly enlarged (Tr. p. 279). Also in 2004, Pruitt underwent a biopsy for a mass in her left

breast (Tr. pp. 257-266, 280-325), which was benign fibro-fatty tissue (Tr. p. 305).

In August 2004, Pruitt was again complaining of back pain radiating to her left leg (Tr. p. 326). Her blood pressure was 134/63 (Tr. p. 326). She was ordered to exercise and referred to physical therapy (Tr. p. 326).

In March 2005 (Tr. pp. 105-109), Pruitt was examined for complaints of back pain, and prescribed back exercises, Flexeril (a muscle relaxer), and Tylenol 3 (Tr. p. 110). In April 2005, Pruitt was again examined for complaints of back pain (Tr. p. 94), with pain at 30 degrees on straight leg raising on the left, and was diagnosed with acute sciatica in her left leg (Tr. p. 95). She was also diagnosed with carpal tunnel syndrome in her left wrist (Tr. p. 97). Pruitt was prescribed Vicodin for pain, rest, and heat applied to the affected areas (Tr. p. 101).

In June 2005, a medical examination showed Pruitt weighed 357 pounds, her blood pressure was 160/89, she still smoked, and she did not follow a diabetic meal plan (Tr. pp. 119, 331). Pruitt was found to be obese, she had a trace of dependent edema, she was off of some of her hypertension medications, her depression was stable, and she was to be started on a new medication for her diabetes (Tr. pp. 119, 331).

In March 2006, Pruitt weighed 350 pounds and her blood pressure was 175/88 (Tr. p. 335). In June 2006, Pruitt complained of back pain; she had a full range of lumbar motion with left lumbar paraspinal tenderness (Tr. p. 352). X-rays of Pruitt's

lumbar spine were normal, with well-maintained disc spaces (Tr. p. 353). Pruitt was prescribed the use of a heat pad, careful lifting, Tylenol 4, and Carisoprodol for back pain (Tr. p. 345-351). Pruitt was also ordered to go to the pain management clinic (Tr. p. 355).

Pruitt underwent a comprehensive psychological evaluation by James B. Pinkston, Ph.D., a clinical psychologist and clinical neuropsychologist, in December 2006 (Tr. p. 364). Pruitt's evaluation was judged to be invalid and the results were found to not be anything close to her actual functioning or ability due to Pruitt's suboptimal effort and dissimilation on cognitive and psychological testing (Tr. p. 364). Pruitt was found to be exaggerating, malingering, and an unreliable informant (Tr. pp. 3664-365). Dr. Pinkston stated that, although Pruitt may have psychological/psychiatric difficulties and cognitive problems, her performance during the examination precluded valid characterization and quantification of any difficulties (Tr. p. 368). There was no reliable evidence of difficulties with understanding and memory, concentration and persistence, social interaction, or adaptation (Tr. p. 368).

At her October 2006 administrative hearing, Pruitt testified that she was 42 years old, had an eighth grade education, and had trained for about three months as a CNA in a nursing home (Tr. p. 375). Pruitt testified that she is 5'7" tall, weighed "a little over 300" pounds, and her weight fluctuated between 300 and 325 pounds (Tr. p. 376).

Pruitt testified she worked in a nursing home for three or four months, but had to stop working there because of her legs and back (Tr. p. 377). Pruitt has never worked anywhere else (Tr. p. 377).

Pruitt testified that she was told at Huey P. Long Hospital that she has "slipped discs, pinched nerves, and spurs" in her back which make her back hurt constantly (Tr. pp. 377-378). Pruitt testified she cannot stand very long or walk very far (Tr. p. 378). Pruitt further testified that she cannot have surgery because she is diabetic and does not heal very well (Tr. p. 378). Pruitt takes Tylenol 3 for pain and Soma, which is a muscle relaxer (Tr. p. 378). Pruitt also testified that she takes "pills" and 70 units of insulin daily for her diabetes (Tr. p. 379). Pruitt testified that her diabetes sometimes make her feet and legs sensitive (Tr. p. 379).

Pruitt testified that she can only walk as far as from her kitchen to her bedroom, she uses a handicap-cart when goes shopping, and she can sit for longer than she can stand up (Tr. pp. 379-380). On a typical day, she gets up in the morning, drinks coffee, "gets going" about noon and does dishes, then cooks and eats (Tr. p. 362). Pruitt does not do anything outside (Tr. p. 382). Pruitt testified that she reads front page articles in the newspaper and other news stories (Tr. p. 385).

Pruitt testified that fluid build-up interferes with her from breathing and that her feet, legs, and hands swell, so sometimes she takes an extra fluid pill (Tr. p. 380). Pruitt testified she

9

has trouble with edema at least once a week if she doesn't keep her legs propped up (Tr. p. 381). Pruitt also testified that she takes 100 mg. Of Zoloft daily for depression, but that it has not really helped, and that she takes 75 mg. a day of amitryptiline for depression and anxiety (Tr. p. 382). Pruitt testified that she suffers from anxiety attacks, with accompanying chest pain and breathing problems, which are caused by worry, being upset, and going shopping (Tr. p. 382).

Gloria Lacaze, Pruitt's sister, testified that Pruitt has crying spells for no reason, talks about feeling worthless, and cannot stay long in stores, around a lot of people, because her chest gets tight and she feels like people are staring at her and talking about her (Tr. p. 384). Lacaze testified that, recently, she has not seen Pruitt more than about once a month (Tr. p. 384).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Pruitt (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and

terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Pruitt has not engaged in substantial gainful activity since January 1, 1990 (Tr. p. 15) and has not past relevant work (Tr. p. 18), and that she has severe impairments of obesity, diabetes mellitus without end organ damage, and hypertension, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 20).

At Step No. 5 of the sequential process, the ALJ further found that Pruitt has the residual functional capacity to perform the full range of light work (Tr. p. 18).  The ALJ found that the Pruitt is a younger individual with an eighth grade education and no transferable work skills (Tr. pp. 18).  The ALJ concluded that there are a significant number of jobs in the national economy which Pruitt can perform and, as directed by Medical-Vocational Rule 202.17, was not under a "disability" as defined in the Social

Security Act at any time through the date of the ALJ's decision on March 23, 2007 (Tr. pp. 18-19).

## Law and Analysis

### Ground No. 1 - The Listings

First, Pruitt alleges the Commissioner erred by not finding she suffers from an impairment or combination of impairments which meet or equal a listing under the Social Security Act.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990). See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990). For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 110 S. Ct. at 891.

Where the impairment is severe, the Commissioner must determine whether the impairment is so severe that the claimant will be presumed to be disabled. This determination is made by comparing the impairment to a specific Listing of Impairments in the SSA regulations. See 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent

to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence. A bare and summary conclusion that a plaintiff does not meet the criteria of any listing is beyond meaningful judicial review. Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).

For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531; Selders, 914 F.2d at 619 (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Zebley, 493 U.S. at 531.

Pruitt argues that she has insulin-dependent diabetes, is morbidly obese, has had congestive heart failure, and has emotional and mental difficulties. However, Pruitt does not contend that any of her individual impairments meets a specific listing, nor does she show how her impairments, cumulatively, equal a specific

13

listing, or how the ALJ erred in concluding her impairments do not, individually or cumulatively, meet a listing.

The ALJ thoroughly discussed the medical evidence of Pruitt's impairments (both alleged and proven), the effects of her proven impairments on her ability to work, and the effect of her obesity on her other impairments (Tr. pp. 15-18). Since Pruitt has not offered any argument to show specifically how she meets a particular listing, Pruitt has not carried her burden of showing the ALJ erred in finding her impairments do not meet or equal a listed impairment.

Moreover, it is noted that there is no medical evidence or diagnosis of congestive heart failure in the record before this court; there is only Pruitt's statement to various doctors that she has had congestive heart failure in the past. Also, there is no medical evidence to support Pruitt's claim of a mental impairment, as discussed below.

This ground for relief is meritless.

Ground No. 2 - Consultative Examiner's Report

Next, Pruitt contends the Commissioner erred by not proffering a copy of the consultative examiner's report to claimant or her attorney prior to issuing a decision determining Pruitt's disability.

The consulting psychologist's report was received by the SSA Disability Hearing Unit in Shreveport on December 14, 2006, by FAX (Tr. p. 364). The Appeals Council found that copies of the report were sent to Pruitt and her attorney on June 13, 2007, *after* the

ALJ's decision was rendered (Tr. p. 3).  However, even though Pruitt apparently did not receive a copy of the consultative examiner's report prior to the ALJ's decision, it is very difficult to perceive how the report could possibly have assisted Pruitt's case on appeal, since it in no way supported Pruitt's claims.

Nor could Pruitt has successfully refuted the psychologist's report.  There is no medical record of Pruitt ever receiving treatment from a mental health care provider; instead she has relied only on the anti-depressants prescribed by her other doctors and, even though she claims they did not work, those doctors believed her depression was stable.  Therefore, Pruitt had no medical evidence with which to rebut the psychologist's report.  The ALJ properly concluded Pruitt's depression was not severe, since she had not shown that it affected her ability to work (Tr. pp. 15-16).

Since there are no mental health care records supporting Pruitt's claim that she suffers from depression which is severe within the meaning of the Social Security Act, Pruitt was not prejudiced by the SSA's failure to send Pruitt and her attorney a copy of the consulting psychologist's report prior to the ALJ's decision.

This ground for relief is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Pruitt's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 23rd day of June, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE